*448 OPINION OF THE COURT
Paula J. Omansky, J.
Plaintiff moves for an order, pursuant to CPLR 4404 (a), setting aside a defendants’ verdict in the interest of justice. Motion numbers 001 and 002 are hereby consolidated for disposition.
Plaintiff commenced this medical malpractice action seeking to recover damages for injuries he sustained to his right eye following lumbar surgery at Columbia Presbyterian Medical Center on March 28, 1994. Plaintiff claims to have lost virtually all of his vision in his right eye following surgery, where the defendant Bernard Rawlins, M.D. was the attending orthopedic surgeon, and the defendants Michael Luvin, M.D. and Charles Cain, M.D. were the attending anesthesiologists.
At the time of the surgery, Gilbert was 36 years of age. He contended that his vision was 20/20 in both eyes, and that he did not wear corrective glasses or lenses. Gilbert also stated that approximately two years prior to surgery he was diagnosed with a condition called sarcoidosis, but that this condition had not affected his eyesight prior to the surgery. Plaintiff claimed that his loss of vision was caused by the improper and negligent placement of his head by defendants as he lay prone for several hours during lumbar surgery.
It is undisputed that defendants Steven Mayberger, John Blank, Eric Jamich, John Gibbons and New York Presbyterian Hospital (codefendants) had designated Dr. James Schütz to perform an ophthalmology medical examination (IME) of plaintiff prior to trial, that the IME had been performed on or about September 23, 1996, and that codefendants intended to call Dr. Schütz to testify on their behalf. However, on January 6, 2000, two days after the trial began, the action was dismissed as against the codefendants, and continued against the remaining defendants, the anesthesiologists.
At trial, plaintiff offered the expert testimony of Dr. Jay Fleischman, a board-certified ophthalmologist, who testified that the damage to plaintiffs eye “is ischemic optic neuropathy, loss of optic nerve function on the right eye” and that the cause of this impairment was the “excessive pressure to the right eye incurred at the time of his face down positioning during spine surgery, compromising] the blood supply to the optic nerve, leading to what we technically call ischemic optic neuropathy, an optic nerve damage.”
On January 10, 2000, defense counsel for the anesthesiologist defendants informed plaintiff’s counsel that he intended to *449 call the dismissed codefendants’ expert, Dr. Schütz, to testify. On January 11, 2000, plaintiffs counsel objected to the appearance of Dr. Schütz as an expert on the grounds, among others, that (1) plaintiff never received notice pursuant to CPLR 3101 (d) of the defendants’ intention to call the dismissed codefendants’ expert, Dr. Schütz; (2) the codefendants’ CPLR 3101 (d) notice only contained disclosure as to Dr. Herbert Sherry, a board-certified orthopedist, and Dr. Sanford M. Miller, a board-certified anesthesiologist; (3) plaintiff never received a copy of the report prepared by Dr. Schütz; (4) Dr. Schütz could not be called to testify since the codefendants were no longer in the action, and the remaining defendants had not “adopted” Dr. Schütz as their expert and/or had not provided plaintiff with a discovery notice to that effect; and (5) Dr. Schütz’ testimony would be cumulative, since the remaining defendants had retained a neuro-ophthalmologist. In an in-court exchange, counsel for the remaining defendants provided plaintiff’s counsel with a copy of Dr. Schütz’ IME report and a copy of a notice pertaining to Dr. Schütz’ testimony, which they claim had been served by cocounsel for the dismissed defendants.
This court, on the record, expressed concern about springing an expert on an opposing party, and warned against cumulative testimony being offered by defendants’ neuroophthalmologist experts, but ruled that the apparent failure of communication should not be chargeable to defendants, and that the remaining defendants would be permitted to offer the testimony of Dr. Schütz.
On January 12, 2000, the remaining defendants called Dr. Schütz as their first expert witness. He testified as to theories of “relative hypotension” and “relative anemia”; and then defense counsel did not call any other expert. On January 13, 2000, the jury returned a verdict of no cause of action.
On this motion to set aside the verdict plaintiff raises the same objections made during trial to Dr. Schütz’ testifying, now emphasizing that Dr. Schütz opined medical theories, “relative hypotension” and “relative anemia,” which had never been disclosed, either in a disclosure statement pursuant to CPLR 3101 (d), or in any medical report received by plaintiff; and that the nondisclosure and inadequate disclosure were both intentional and willful, resulting in prejudice to plaintiff, as he was effectively denied the opportunity to discuss Dr. Schütz’ theories with Dr. Fleischman, and to prepare properly for trial.
Defendants insisted then, as they do now, that the disclosure pertaining to Dr. Schütz was timely and properly sent to *450 plaintiffs counsel’s office by the dismissed codefendants. Plaintiff maintained at trial, as he does now, that a thorough check of plaintiffs counsel’s office and file failed to uncover the disclosure in question.
Defendants rely on a July 20, 1997 transmittal letter of Theodore B. Rosenzweig, counsel to the codefendants, to demonstrate that plaintiff had notice of the defense’s intention to call Dr. Schütz as an expert. The letter simply states:
“Defendants, Presbyterian Hospital, Mayerberger, Blank, Jamrich & Gibbons hereby serve reports of non-treating and examining experts in the above-referenced matter.”
Notably, this statement does not provide the names of the experts, or the number of reports enclosed. Accordingly, the note is not probative on the issue of whether plaintiff received, or had reason to be aware that he did not receive, all of the medical reports, in particular that of Dr. Schütz.
On October 27 and/or October 29, 1999 codefendants purportedly served a “Disclosure Pursuant to CPLR 3101 (d)”[1] describing the experts they proposed to call as witnesses: Drs. Sherry, Miller and Schütz. CPLR 3101 (d) requires the notice to provide reasonable detail as to the substance of the facts and opinions on which the expert is intended to testify (Brossoit v O'Brien, 169 AD2d 1019, 1020 [3d Dept 1991]).
“One of the purposes of the 1985 amendment to CPLR 3101 (d) was to expedite the resolution of personal injury claims, in order to reduce litigation costs, by encouraging full disclosure of expert opinion testimony (mem of Exec Dept. 1985 McKinney’s Session Laws of NY, at 3025). The Executive Department’s memorandum emphasizes that, ‘Although virtually all other information is now shared by litigants in civil practice, information concerning expert witnesses and their opinions remain shielded from disclosure. Since the testimony of expert witnesses is often the single most important element of proof in medical malpractice and other personal, injury actions, sharing informa *451 tion concerning these opinions encourages prompt settlement by providing both parties an accurate measure of the strength of their adversaries’ case. In addition, both parties will be discouraged from asserting insupportable claims or defenses, knowing that they will be required to disclose what, if any, expert evidence will support their allegations.’ ” (See, Carroll v Nunez, 146 Misc 2d 422, 425 [Sup Ct, Ulster County 1990].)
Assuming plaintiff received a copy of codefendants’ CPLR 3101 (d) notice,[2] it provided with respect to Dr. Schütz:
“At the time of trial the defendants will call as an expert witness James Schütz, M.D. Dr. Schütz is board certified in ophthalmology. It is anticipated that Dr. Schütz will testify at the time of trial about the results of his physical examination of the plaintiff. He will also testify about the contents of the report. Dr. Schütz will also testify on the issue of causation and that the defendants did not proximately cause the plaintiffs injuries as alleged.
“Dr. Schütz’ testimony will be based upon his physical examination of the plaintiff and report of the same, his review of the applicable medical records, the applicable examination before trial transcripts, the applicable pleadings, trial testimony and upon his experience and knowledge as a physician practicing in the field of ophthalmology.
“The defendants reserve the right to supplement this response up to and including the time of trial.”
Oh the face of it, codefendants’ notice as to Dr. Schütz was inadequate as it failed to provide any clear idea of the nature of Dr. Shutz’ intended testimony (CPLR 3101 [d]) and merely stated the ultimate conclusion reached by Dr. Shutz. .
The prejudice to plaintiff, assuming he received the CPLR 3101 (d) notice, was overwhelming. Plaintiffs case, through his expert’s testimony, was that the loss of vision in his right eye was due to pressure on the optic nerve due to improper positioning of the head while plaintiff was in a face down position during surgery. The substance of the codefendants’ CPLR *452 3101 (d) notice as to Dr. Sherry, an orthopedist, and Dr. Miller, an anesthesiologist, was that plaintiff was properly positioned. The notice, as to Dr. Schütz, the ophthalmologist, gave no hint that he would testify that the loss of vision in plaintiff’s eye was due to internal reactions in plaintiff’s body during the surgery, namely “relative hypotension” and “relative anemia.”[3]
Although the court permitted codefendants to call Dr. Schütz, this was error; there was insufficient disclosure no matter who called Dr. Schütz. Plaintiff was prejudiced because an undisclosed defense was injected into the case for the first time without affording plaintiff the opportunity to meet the new theories of relative hypotension and relative anemia as the causative factors of plaintiffs injuries.
Defendants argue that plaintiff knew that codefendants had designated Dr. Schütz as their expert ophthalmologist, that Dr. Schütz performed an IME in September 1996, and yet plaintiff never complained that he had not received the report.
If defendants had any right to complain about plaintiff, it arose when they “adopted” Dr. Schütz as their own expert. This did not happen until midtrial on January 10, the date defendants first gave plaintiff notice of their intention to call Dr. Schütz. While there is nothing in the language of CPLR 3101 (d) which prohibits one party from “adopting” another party’s expert, there is likewise no language in CPLR 3101 (d) which exempts the adopting party from complying with the statutory notice. Defendants’ notice with respect to Dr. Schütz, given in midtrial, was late and they are hardly in a position to' complain that plaintiff was late in making objections to Dr. Schütz. Moreover, plaintiff did not waive his right to complain because he did not do so prior to trial. It was codefendants’ obligation to make proper disclosure or risk preclusion of expert testimony, even if the nondisclosure was not willful (see, Douglass v St. Joseph’s Hosp., 246 AD2d 695, 696 [3d Dept 1998]; Qian v Dugan, 256 AD2d 782 [3d Dept 1998]).
*453 Because of the defendants’ failure to establish that their adopted expert’s report was exchanged prior to trial and because of the inadequacy of the CPLR 3101 (d) notice served during trial, the witness should have been precluded. Since Dr. Schütz was the only expert for defendants, the failure to provide timely and adequate disclosure pursuant to CPLR 3101 (d) constitutes grounds for setting aside the verdict.
Accordingly, plaintiffs motion to set aside the verdict is granted, and this court need not reach the other arguments raised by plaintiff; and it is ordered that a new trial is mandated in the interest of justice.

. CPLR 3101 (d) provides in relevant part: “1. Experts, (i) Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion.”

. Codefendants’ attorney, who drafted the expert witness disclosure, was unable to find any hard copies or any record on the computer. The computer reports only a record of two affidavits of service allegedly typed by a secretary. Codefendants are unable to produce any copy of such affidavits of service.

. We note that codefendants’ CPLR 3101 (d) notice with respect to Dr. Sherry recited that his report was dated December 13, 1996 and exchanged on January 20, 1997. Similarly, it recited with respect to Dr. Miller that his report was dated July 2, 1997 and forwarded to all parties on July 20, 1997. By contrast, no date is given for Dr. Schütz’ report, and no date is given for any exchange. This suggests that the codefendants’ attorney did not have Dr. Schütz’ report at hand when he drafted the CPLR 3101 (d) notice and tends to support plaintiffs position that he never received Dr. Schütz’ report. Dr. Schütz’ IME report did not in any event discuss the opinions he expressed at trial of “relative hypotension” and “relative anemia,” which the CPLR 3101 (d) notice should have disclosed in some form.